Banuskevich v. City of Nashua, et al. CV-00-079-M    05/25/01
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Jennifer Banuskevich,
      Plaintiff

      v.                                    Civil No. 00-79-M
                                            Opinion No. 2001 DNH ___
City of Nashua, NH and
Nashua Police Commission,
      Defendants


**O R D E R**


While working as a communications technician with the Nashua
Police Department ("NPD"), plaintiff applied for, but was denied,
a job as a Parking Enforcement Specialist ("PES").  In this suit
she alleges that her prior use of sick leave played a role in the
adverse decision, in violation of the Family Medical Leave Act,
29 U.S.C. § 2601 et seq. ("FMLA").  She further contends that she
was constructively discharged, in that her working conditions
were rendered intolerable by her employer's reaction to her use
of authorized medical leave.  Defendants move for summary
judgment.

As always, to prevail on their motion for summary judgment,
defendants must show there is "no genuine issue as to any
material fact . . . and [that they are] entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). When considering the facts, all reasonable inferences are drawn in a light favorable to the non-moving party. See Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

In analogous cases of alleged employment discrimination, two analytical methods are generally relevant - mixed-motive analysis and the now familiar McDonnell Douglas burden-shifting framework. See Fernandes v. Costa Brothers Masonry, Inc., 199 F.3d 572, 579-80 (1st Cir. 1999); see also generally Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); McDonnell Douglas, Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas approach, the plaintiff retains the burden of persuasion at all times. Febres v. Challenger Caribbean Corp., 199 F.3d 57, 60 (1st Cir. 2000). The mixed-motive approach is taken, however, when direct evidence of discrimination exists. If the plaintiff presents "direct evidence that a proscribed factor . . . played a motivating part in the disputed employment decision," and the evidence is accepted by the fact finder, the burden of persuasion shifts to the defendant. Id.

The First Circuit has adopted the McDonnell Douglas framework for FMLA cases, like this one, and would probably

follow a mixed-motive approach in appropriate "direct evidence" FMLA cases as well. See Hodgens v. General Dynamic Corp., 144 F.3d 151, 160 (1st Cir. 1998) (applying McDonnell Douglas framework "when there is no direct evidence of discrimination"); see also, e.g., Fernandes, 199 F.3d at 579 (adopting mixed-motive analysis in age discrimination case).

In this case, plaintiff claims defendants violated the FMLA's prohibition against considering the "use of FMLA leave as a negative factor in employment actions such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); see also Hodgens, 144 F.3d at 160. Defendants counter that plaintiff has not actually suffered any "adverse employment action," and, given the undisputed facts, the city is not liable under the FMLA.

A.   Adverse Employment Action

In other, but comparable, employment discrimination contexts an "adverse employment action" has been found to consist of an unfavorable tangible action ". . . such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in

3

benefits." See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (Title VII). Defendants say that neither their refusal to offer plaintiff the PES position she sought, nor her alleged "constructive discharge," qualifies as a "tangible employment action."

Defendants are correct that plaintiff cannot rely on her alleged constructive discharge to supply the adverse employment element of her discrimination claim, because it is clear that she was not constructively discharged. It is well settled that in order to establish a constructive discharge claim, plaintiff must demonstrate that she experienced "harassment so severe and oppressive that staying on the job while seeking redress [was] intolerable." See Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 10 (1st Cir. 2001). It is an objective test. See Suarez v. Pueblo Intern, Inc., 229 F.3d 49, 54 (1st Cir. 2000). "The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins - thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard cold world." Id.

Plaintiff's only evidence of harassment is a single telephone call from then-Chief of Police Clifton Largy, during

4

which he told her she was not being offered the PES position. Chief Largy was allegedly "very nasty, very demeaning, [and] insulting." But plaintiff concedes that this one call was the sole reason for her decision to resign. That one unpleasant interaction even as described by plaintiff, does not qualify as "severe and oppressive" harassment justifying resignation rather than staying on the job to seek redress.

Furthermore, there is no dispute that plaintiff called her supervisor to resign immediately after the conversation with Largy - thus, the incident was not itself severe or oppressive, and she did not subsequently experience an intolerable work environment because of the incident. It is also not disputed that plaintiff's supervisor asked her not to resign, and to contact him if she changed her mind about quitting (suggesting she would be reinstated). A reasonable person would not overreact to the single incident plaintiff describes and would not have concluded that such an incident rendered the work environment so intolerable that resignation was the only realistic option. See Taylor v. Virginia Union Univ., 193 F.3d 219, 237 (4th Cir. 1999) ("[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult

5

or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.  Moreover, the denial of a single promotional opportunity is insufficient to create an intolerable environment." (internal citations and quotation marks omitted)); see also Keeler, 238 F.3d at 10; Peters v. Community Action Committee, Inc., 977 F. Supp. 1428, 1436 (M.D. Ala. 1997).

However, while the asserted "constructive discharge" cannot satisfy the "adverse employment action" element of plaintiff's discrimination claim, defendant's failure to promote (or refusal to hire) plaintiff for the PES position does satisfy that requirement.  Plaintiff has submitted evidence tending to show that at the time she was rejected for the PES position, she was earning $21,000 as a communication technician, while the woman later hired for the PES position started at a salary of $25,000.  Accordingly, on this record, it appears that plaintiff would have earned a higher salary had she been offered the PES position.  Plaintiff's rejection for a position with a higher salary is an adverse employment action sufficient to trigger potential liability.

The next step, then, is determining which analytical approach to follow.

B.    <u>McDonnell Douglas</u> Framework

Defendants claim they are entitled to summary judgment under the <u>McDonnell Douglas</u> framework.  To meet her initial burden under this test, plaintiff must establish a prima facie case of discrimination based on her use of FMLA leave.  She must show: (1) that she availed herself of FMLA leave; (2) that she was adversely affected by an employment action; and (3) a causal connection between (1) and (2).  <u>Hodgens</u>, 144 F.3d at 161.  This is not an onerous task, <u>see</u> <u>id.</u> at 165, and plaintiff easily meets her burden in that regard.

For purposes of this motion, defendants concede that at least some of plaintiff's sick leave was protected under the FMLA.  As discussed above, on this record, plaintiff suffered an adverse employment action because the PES position's salary was higher.  And finally, plaintiff stated in her deposition and affidavit (appended to her opposition to summary judgment) that Chief Largy, the person responsible for deciding who would be offered the PES position, told her directly she was not being offered the job because of her past use of sick leave.  Additionally, the memorandum on which Largy claims he based his decision is largely devoted to plaintiff's history of sick leave

use.  Defendants concede that they did not distinguish between plaintiff's protected and unprotected leave when considering whether to offer her the PES job. [1]

Having established a prima facie case, the burden of production shifts to defendants to articulate legitimate, non-discriminatory reasons for not offering plaintiff the PES position.  Defendants have met that burden by stating that they considered other factors as well, including two disciplinary reports unrelated to sick leave use, plaintiff's performance on a 1998 driving test (the first time she applied for a PES

[1]Defendants' attempt to defeat the causation prong, on grounds that they did not distinguish between protected and unprotected leave, is unpersuasive.  It is clear from the record that plaintiff followed the NPD's sick leave procedures by either calling in with a reason for her absence or filling out a "statement of absence" card.  Some of these cards indicate she was taking sick leave because of a migraine headache, or to care for her son following one of his asthma attacks.  For the purposes of this motion, defendants concede that asthma and migraine headaches are "serious medical conditions" and leave related to those conditions is protected under the FMLA. Accordingly, the cards placed defendants on notice of the possibility that plaintiff was using FMLA protected leave.  See 29 C.F.R. § 825.303 (discussing notice requirements for unforseeable leave).  Defendants were, therefore, obligated to act appropriately.  See id.  If liability could be avoided by failing to distinguish between protected and unprotected leave, the protective intent of the FMLA would be undermined.  Cf. 29 C.F.R. § 825.220(c) ("nor can FMLA leave be counted under 'no fault' attendance policies").

position), and plaintiff's 1990 driver's license suspension for excessive speeding tickets. These are all neutral and nondiscriminatory reasons for not offering plaintiff the PES position.

Since defendants have met their burden of production, plaintiff must show that there is a genuine dispute about whether defendants' proffered reasons are actually a pretext for discrimination. See Hodgens, 144 F.3d at 167. At this stage, "courts must be 'particularly cautious' about granting the employer's motion for summary judgment. Id. "Where . . . the nonmoving party has produced more than [conclusory allegations, improbable inferences, and unsupported speculation,] trial courts should use restraint in granting summary judgment where discriminatory animus is in issue." Id. (internal citations and quotation marks omitted). Obviously, each case is sui generis, but where discriminatory animus might fairly be inferred, summary judgment is not available. See id. at 168.

Plaintiff has presented deposition testimony and affidavits supporting and recounting statements allegedly made to her by Largy (the decision-maker) suggesting that the proffered legitimate reasons for rejecting her application would not, on

9

their own, have kept her from securing the PES position, and, that the primary reason she was not offered the position was her use of sick leave (which included use of protected leave). Thus, a genuine dispute arises concerning Largy's actual reason for rejecting plaintiff's application for the PES position. Although many of plaintiff's sick leave absences were not FMLA protected, if her use of sick leave was the reason for her rejection, and defendants did not distinguish between protected and unprotected leave, plaintiff's use of FMLA leave may have led to her rejection, which of course would be unlawful. See Monica v. Nelco Chemical Corp., 1996 WL 736946, No. Civ. A. 96-1286 (E.D. La. Dec. 26, 1996), at *2 (denying summary judgment in case where only one of six allegedly considered absences was FMLA protected) cited in Hodgens, 144 F.3d at 168. Accordingly, the court cannot, at this stage, find as a matter of law that defendants' articulated reasons are not pretextual.

C.   Mixed-Motive Approach

Plaintiff says she has actually presented direct evidence of discrimination, and urges the court to employ the mixed-motive analytical approach instead. Assessing whether proffered

evidence adequately triggers a mixed-motive analysis is usually a complicated task, and one that need not be tackled in this case (at least not at this point). See Febres, 214 F.3d at 60 (noting that there is not yet a clear understanding of what constitutes "direct evidence" to trigger mixed-motive approach). Because defendants have failed to demonstrate the absence of a genuine issue of material fact as to the non-pretextual nature of their proffered reasons for rejecting plaintiff for the PES position, see supra, they have failed to demonstrate that they are entitled to summary judgment under the analytical approach more burdensome to plaintiff. Accordingly, even if the mixed-motive approach was employed, plaintiff would similarly prevail on this motion for summary judgment. See Febres, 214 F.3d at 60 (explaining that although initial burden under mixed-motive is heavier on plaintiff, greater burden shifted to defendant is "pronounced advantage").

## Conclusion

For the foregoing reasons, there exists a genuine dispute as to whether plaintiff's use of FMLA protected leave led to defendants' rejection of her application for the PES position.

However, as a matter of law, Chief Largy's alleged unpleasantness toward plaintiff did not constitute a constructive discharge. Accordingly, defendants' motion for summary judgment (document no. 8) is granted with respect to plaintiff's constructive discharge allegation, but denied in all other respects.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 25, 2001

cc:   James W. Donchess, Esq.
      James M. McNamee, Jr., Esq.