Sheppard v. River Valley, et al.      CV-00-111-M    01/22/04
                  UNITED STATES DISTRICT COURT

                  DISTRICT OF NEW HAMPSHIRE


Mary Chris Sheppard and
Robert Sheppard,
      Plaintiffs

      v.                                  Civil No. 00-111-M
                                          Opinion No. 2004 DNH 020
River Valley Fitness One, L.P.
d/b/a River Valley Club, et al.,
      Defendants


                        **O R D E R**


     This case has been settled, but as the parties correctly

point out, an appeal from an earlier order by the Magistrate

Judge imposing discovery sanctions remains unresolved.

Defendants' counsel, W. E. Whittington, Esq., who was sanctioned,

takes issue with findings made and conclusions drawn by the

Magistrate Judge that were critical of his professional conduct

in this and a related case (that other case was consolidated with

this one for purposes of discovery).  Whittington is unwilling to

withdraw the appeal, notwithstanding settlement of the underlying

case, for essentially two reasons.  First, he believes the

Magistrate Judge's findings, and the words used to express those

findings, unjustifiably injure his professional reputation.

Second, based upon a preliminary demand he received, Whittington says that plaintiffs' counsel are seeking to convert the imposed sanction (i.e., that Whittington "shall personally compensate the plaintiffs for their expenses, including reasonable attorney's fees, incurred in connection with their opposition to and the motion for relief from the protective order [that Whittington obtained]") into an exorbitant recovery, in excess of $25,000.

### Background

To say this litigation has been heated and contentious would be something of an understatement. This final contest arises from the settlement of the related case that was consolidated for discovery purposes with this case, and from representations made to the court and opposing counsel about that settlement. See Aubin v. River Valley Fitness One L.P., et al., Civil No. 00-110-B. An extensive recitation of the litigation's history would be tedious and unnecessary to the resolution of the pending appeal. It is enough to briefly summarize the background facts, and focus on those discrete facts pertinent to this appeal, as and when appropriate.

M. C. Sheppard, the principal plaintiff here, brought a Title VII claim against defendants based upon sexual harassment she allegedly experienced during the course of her employment by defendants. Robert Aubin, who managed the health club owned by defendants and at which Sheppard worked, also brought suit, separately, claiming he was discharged in retaliation for reporting Sheppard's harassment complaints. Defendants took the position, in both cases, that no sexual discrimination, harassment, or retaliation occurred, and they counterclaimed against Sheppard and Aubin, generally asserting a civil conspiracy involving them and others to fabricate the discrimination claims.

In August of 2000, defendants and Aubin agreed to settle their dispute. Whittington drafted and sent a letter to Aubin's counsel, dated August 15, 2000, in which he outlined the terms of the settlement. To be sure, the letter begins with a declaration that it "will summarize our settlement discussions." Exhibit 2, Document No. 132. And, it expresses the obligations of the parties in terms generally used in a proposal (i.e., "Aubin would agree to," and "would cooperate," etc.). But the letter ends

3

with the following comment: "If the above is satisfactory, please indicate by signing below and returning a copy of this letter." Counsel for Aubin reviewed the letter, found it satisfactory after obtaining minor clarifications, and formally accepted the proposal, evidenced by her signature on August 16, 2000.

The record is clear that as of that date, the parties had entered into a settlement agreement, the terms of which were clear and easily determined by reference to the letter signed by both counsel. According to the terms of the agreement, the settlement was subject to a few conditions subsequent (e.g., Aubin was to provide an affidavit disclosing his relevant knowledge and cooperate in the defense of the case). Had those conditions not been met, perhaps defendants could rescind the agreement and declare the settlement null and void. But still, the parties had settled the case on the terms described as of August 16, 2000. All that remained was performance of the obligations described in the August 15th letter; there was nothing of substance left to negotiate. The settlement may not have been fully accomplished, but both sides were bound to

4

perform.  The provisions of the agreement pertinent to this appeal are as follows:

1.  Rob Aubin would agree to a stipulated judgment of $50,000 in favor of RVC on the counterclaims.  All other claims would be dismissed with prejudice each party to bear his/her/its own costs and attorneys fees, and mutual releases would be exchanged on all of those claims.  Of the judgment amount, $100 would be paid in cash after the judgment is entered, in exchange for release and satisfaction of judgment from RVC, and RVC would not seek to collect any other portion of the judgment or costs or fees from Aubin or your firm. This provision would be subject to receiving a net worth statement from Aubin, on oath, showing no assets not protected by the Florida bankruptcy exemptions, which we assume you could provide today or early tomorrow.

2.  Rob Aubin would cooperate with us in providing truthful written and oral testimony leading to a signed affidavit, and any e-mails, based on discussions with us at a mutually agreed time by the end of next week. In addition, Aubin will be available to discuss further facts, and provide truthful affidavits, on a continuing basis until the Sheppard case is resolved.  This would cover the following subjects:

(a)  His actions/discussions with M.C. Sheppard, and his responses.

. . .

(e)  Any other truthful information relating to the claims in the case or in Sheppard's case.

(f)  If [defendants] asked him to testify at Sheppard's trial, he would do so (and

5

> [defendants] would pay his airfare and hotel
> expense in Concord).
>
> <u>The settlement is contingent upon defendants'
> satisfaction that Aubin is assisting defendants in good
> faith to the best of his ability</u>.  . . . .
>
> 3.   The parties shall maintain absolute confidentiality
> as to the fact that the judgment will not be paid in
> full.  . . . .
>
> 4.   The parties would delay filing the stipulated
> judgment and other settlement documents with the Court
> until after getting a ruling on the Brannen and Panzica
> motions, and defendants receiving their documents and
> taking their depositions.  *The parties will jointly
> inform the Court we're close to settlement,* *jointly
> request it reschedule the status hearing for late
> September,* <u>*and tell the Court it would help the
> parties' settlement negotiations to get a prompt ruling
> on the Brannen/Panzica motions*</u>, *which Aubin will now
> join.*

Letter, dated August 15, 2000, Document 132, Exhibit 4.
(emphasis supplied)


Counsel subsequently informed the court (in the <u>Aubin</u> case) that:

> The parties advise the Court that they have seriously
> discussed settlement, that they believe the prospects
> for settlement are excellent after resolution of the
> two pending motions [Brannen and Panziak], and that
> resolution of the motions will be helpful to the
> settlement process.


Document No. 132, p. 11.

The Magistrate Judge accepted the parties' statement at face value, and ruled on the pending discovery motions pertaining to Brannen and Panziak. Based upon representations made by Panziak's counsel that he had no materials sought by defendants, the court denied the Panziak discovery motion as moot. The Brannen discovery motion was granted, and Brannen thereupon produced documents and gave a deposition.

If the words used by Whittington are examined with precision, one might plausibly argue that he did not, literally, misrepresent pertinent facts to the court. After all, the parties did "seriously discuss settlement" (in fact they agreed upon the terms of settlement); they did "believe the prospects for settlement are excellent after resolution of the two pending motions" (in fact, the prospects were excellent even if the motions were not resolved, since an agreement had been reached and it was not contingent upon resolution of those motions); and they no doubt did believe that "resolution of the motions will be helpful to the settlement process" (because the "process" to which they had already agreed contemplated a check on Aubin's

7

good faith cooperation by examining the Brannen/Panziak documents being sought in the pending motions).

But, it is also plain that, at best, the court was led to perceive something other than the actual state of affairs with regard to the settlement status of the Aubin case. The parties' carefully chosen words were capable of conveying (and obviously did convey to the Magistrate Judge) an impression substantially broader than that which a literal, minimalist construction of the words would support. In some quarters that style of communication is regarded as "quibbling," and it certainly qualifies as "sharp practice," well outside the boundaries of complete and full candor owed to the court by those who practice law in this district. At worst, counsel intentionally sought to mislead the court with regard to the actual settlement status of the Aubin case in order to obtain rulings on pending motions that otherwise probably would not have been made.

Satisfied that Aubin had fulfilled his cooperation agreement (though some obligations, like testifying at a later time, remained), defendants and Aubin exchanged mutual releases, filed

8

the agreed upon stipulation for judgment (that provided for entry of judgment in defendants' favor in the amount of $50,000 on their counterclaims, but did not mention the contemporaneous satisfaction of all but $100 of that amount), and formally ended the litigation brought by Aubin.  Whittington then sent a letter to Sheppard's counsel, dated October 6, 2000, in which he disclosed that Aubin's case had settled and invited settlement discussions in Sheppard's case.  Whittington wrote:

> Attached please find a Stipulation to Judgment signed by Judge Barbadoro on October 4 in the amount of $50,000 in [defendants'] favor in the Aubin case.  It is clear that, when presented with the extensive evidence that we have compiled in support of our counterclaims against him and our motion for summary judgment on his own claims, Aubin and his counsel saw that the litigation had only one possible outcome.

Missing from that letter also was any mention of the satisfaction agreement contemporaneously forgiving $49,900 of the stipulated judgment amount.  Once again, the words used (and not used) by Whittington seem carefully chosen, and, if dissected and construed from a minimalist point of view, are defensible as "literally true."  But, it is likewise plainly apparent that those words were meant to convey more - i.e., that Aubin had agreed to <u>pay</u> a substantial judgment - to encourage Sheppard to

9

pay a similar amount to settle her case. It was, in purpose, an attempted ruse; a clumsy one, but an attempted ruse nevertheless.

Sheppard's counsel were neither fooled nor intimidated. Their reaction was predictable and straightforward. They asked to see the papers related to the Aubin settlement. After some foot-dragging by Whittington, and failure to respond to discovery requests to produce the Aubin settlement documents, plaintiff's counsel filed a motion to compel production. It was at this point that the problems began to come to light.

In response to plaintiffs' motion to compel, Whittington filed a motion for protective order. Document No. 67. In it he made two arguments. First, he argued that the Aubin settlement documents "[have] no bearing on any of the issues in this case, and [are] not calculated to lead to admissible evidence." Id. Second, he argued that disclosure of the documents would "violate the contractual confidentiality rights of Robert Aubin" and "defendants would be damaged by release of the information generally because it may have bearing on claims of six other persons who currently are in litigation with [the defendants]."

10

Id. Whittington sought alternative relief: 1) that no disclosure be ordered, or, 2) if disclosure was ordered, that access to the documents be restricted to Sheppard's counsel. Significantly, Whittington also offered, in the motion, "to submit the document[s] at issue to the Court under seal [for in camera review], which would demonstrate the lack of any material relevant to the instant case."

By margin order, the Magistrate Judge granted the motion in part and denied it in part. He ordered production of the settlement documents, but granted some protection by limiting access to Sheppard's counsel. Needless to say, Sheppard's counsel were unhappy to learn the actual circumstances surrounding the Aubin settlement, and, after reviewing the documents, promptly moved for relief from the protective order as entered as well as for sanctions against Whittington.

The Magistrate Judge was also displeased when he reviewed the documents in connection with Sheppard's motion for relief. He immediately vacated the limited protective order and directed Whittington to show cause why he should not be sanctioned. See

11

Fed. R. Civ. P. 34(a)(4)(B).  A hearing was held and, thereafter, the Magistrate Judge issued a written order in which he made findings and imposed sanctions on Whittington.  The sanction at issue here is the Magistrate Judge's order requiring Whittington to pay plaintiffs' reasonable expenses and attorneys' fees incurred in objecting to the motion for protective order and in seeking relief from it.

### Analysis

Motions for sanctions are, generally speaking, treated as nondispositive.  There are exceptions - if, for example, the sanction effectively disposes of the case - but none applies here.  Accordingly, the "clearly erroneous" standard of review is applicable in resolving counsel's objection to Magistrate Judge Muirhead's sanctions order.  Applying that deferential standard of review, the court must accept the Magistrate's findings of fact and the conclusions he drew from them, absent reason to strongly believe that a mistake has been made.  Phinney v. Wentworth douglas Hospital, 199 F.3d 1 (1st Cir. 1999).  A Magistrate Judge's nondispositive sanctions order can be modified or set aside by the district court only if it is "found to be

12

clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). This is not a matter in which <u>de</u> <u>novo</u> review is available. <u>Phinney</u>, <u>supra</u>.

The Magistrate Judge found, essentially, that Whittington's motion for protective order relative to the <u>Aubin</u> settlement documents was filed without justification. The Magistrate specifically found that Whittington did not have a justifiable basis upon which to contend, as he did in the motion, that the <u>Aubin</u> settlement documents were not relevant to or discoverable in the <u>Sheppard</u> case. The record supports that finding.

Any reasonable attorney would have, and should have recognized immediately that a settlement agreement in a case consolidated for discovery with a similar case (that raised similar claims against identical parties) and that calls for a settling party to cooperate in defending the related/consolidated case, and to disclose knowledge pertinent to the subject matter of the related/consolidated case, and to provide an affidavit for use in, and to testify in, the related/consolidated case, constitutes relevant evidence in the related case. At a minimum,

13

it is likely to lead to the discovery of additional relevant and admissible evidence.  It is perfectly obvious that such documents relate directly to the credibility and motive of the settling party in providing information and testifying about critical facts in the ongoing litigation.  It is equally self-evident that such documents would directly lead to the discovery of admissible evidence, e.g., the substantive disclosures made by the settling party about facts critical to the issues pending in the ongoing case.  This is not a close question.

Whittington had no justifiable basis upon which to argue that the <u>Aubin</u> settlement documents were irrelevant to the <u>Sheppard</u> litigation.  And, against the backdrop of his less than candid representations regarding the settlement status of the <u>Aubin</u> case, the Magistrate Judge could reasonably find that Whittington filed the motion for protective order knowing that it was unjustified.

Whittington also based the motion on a claim that <u>Aubin's</u> rights of confidentiality might be compromised by disclosure. The Magistrate Judge implicitly accepted that premise, as

14

demonstrated by his granting the motion for protective order in part. He limited disclosure and access to the allegedly confidential documents to opposing counsel. But, as noted, when opposing counsel saw the documents, the unjustified argument became clear.

While I may not have drawn the same strong conclusions from the record as the Magistrate Judge did regarding Whittington's purpose and motives, I cannot say he committed clear error in his substantive ruling - that Whittington is properly subject to sanctions under Fed. R. Civ. P. 37(a)(4) in the form of personally paying the reasonable expenses, including attorneys' fees, incurred by plaintiffs in opposing and seeking relief from the protective order.

When a motion for protective order is denied or, as in this case, vacated, sanctions must be considered. Fed. R. Civ. P. 34(a)(4)(B) provides:

> If a motion is denied . . . the court shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the

15

> motion, including attorneys' fees, unless the court
> finds that the making of the motion was substantially
> justified or that other circumstances make an award of
> expenses unjust.

See generally Cobell v. Norton, 206 F.R.D. 324 (D.D.C. 2002); Reiser v. The West Company, 1988 WL35916 (E.D.Pa.); Wilson v. Olathe Bank, 184 F.R.D. 395 (E.D.Ks. 1999).

Of course, the Magistrate Judge did not find that the "making of the motion was substantially justified or that the circumstances make an award of expenses unjust." Rather, he affirmatively found that the motion was entirely unjustified, and the circumstances warranted the imposition of sanctions. The record supports that conclusion. In that regard, I cannot find the sanctions order to be either clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

I am not persuaded, however, that the record supports the Magistrate Judge's conclusion that Whittington filed the motion for protective order in an effort (in part) to "conceal his deceptive conduct in the Aubin case," by which the Magistrate meant counsel's less than fully candid representations to the

16

court regarding the status of the <u>Aubin</u> settlement. Whittington did, after all, offer to file the <u>Aubin</u> settlement documents with the court for <u>in camera</u> inspection - hardly the kind of offer likely to be made by one bent upon concealing his misconduct. Whittington vigorously denies any such motive, and his actions generally support his denials, as does the general tenor of the record. Whittington did not, and seemingly still does not, appreciate the fact that his representations regarding the <u>Aubin</u> settlement were improper. He should, but that he does not is probative of his motives. It is highly unlikely that he was motivated to file the motion for protective order to conceal misconduct he did not (and still does not) recognize as misconduct. To the extent the Magistrate Judge so found, I hereby overrule that finding on grounds that there is reason to strongly believe a mistake has been made.

That finding should be of little solace to Whittington, however, because the record does fully support the Magistrate Judge's other findings and conclusions. Whittington engaged in sharp practice, did not fully meet his obligation of complete candor to the court, did not meet the high standard of

17

professionalism and civility expected in this state in his dealings with the court or opposing counsel, and filed an unjustified motion for protective order.  All of which precludes a finding that "circumstances make an award of expenses unjust" under Rule 37(a)(4).

## Conclusion

The sanctions imposed by the Magistrate Judge are affirmed. Within thirty (30) days of the date of this order, plaintiffs shall file a detailed and well-supported request for <u>reasonable</u> expenses, including attorneys' fees, incurred in opposing the motion for protective order and moving for relief from that order.  Attorney Whittington shall be afforded the opportunity to object within ten (10) days of plaintiffs' filing, and, if necessary, a hearing shall be held on the amount Whittington shall be required to pay.  The Magistrate Judge shall determine the appropriate sanction amount in the event of a dispute, subject to review in the usual course.

**SO ORDERED.**

                                      _____

                                        Steven J. McAuliffe
                                        United States District Judge

January 22, 2004

cc:  Lauren S. Irwin, Esq.
     William E. Whittington, IV, Esq.
     Joseph F. Daschbach, Esq.