**RED LAKE BAND OF CHIPPEWA INDIANS, Plaintiff,**

**v.**

**CITY OF BAUDETTE, Minnesota, a municipal corporation; Independent School District No. 386, Successor in Interest to Independent School No. 111, a municipal corporation; State of Minnesota; Canadian National Railroad Company, a corporation, successor in interest to the Minnesota and Manitoba Railroad Company, a corporation; Minnkota Power Cooperative,** Inc., a corporation; First National Bank of Baudette, a corporation; Baudette Oil Co., Inc., a corporation; Co-Op Service, Inc., of Baudette, a corporation; Larry Larson, dba Rapid River Grain and Seed Company; Howard Mord, dba Howard's Oil Company; Elwood L. Dahl and Lloydeen E. Dahl, dba Phillips 66; Robert E. Schuler dba Schuler Company; and Exports, Inc., Defendants.

**No. Civ. 4-89-719.**

United States District Court,
D. Minnesota,
Fourth Division.

July 18, 1991.

Marvin J. Sonosky, Rodney J. Edwards, James F. Bodin, Duluth, Minn., and Sonosky, Chambers & Sachse, Washington, D.C., for plaintiff.

John E. Jacobson, Jacobson Law Office, Minneapolis, Minn., for defendants City of Baudette and Independent School Dist. 386.

Hubert H. Humphrey, III, Minn. Atty. Gen., and Gail I. Lewellan, Asst. Atty. Gen., St. Paul, for defendant State of Minn.

Gilbert W. Harries, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, Minn., Philip A. Nacke, Hopkins, Sutter, Hamel & Park, Washington, D.C., for defendants Canadian Nat. R.R. and Minn. & Manitoba Ry.

John P. Bailey, Bailey Law Office, Bemidji, Minn., for defendant Minnkota Power Co-op.

Daniel C. Adams, Bowman & Brooke, Minneapolis, Minn., Jeffrey R. Ansel, Timothy K. Masterson, Winthrop & Weinstine, St. Paul, Minn., for defendant First Nat. Bank of Baudette.

Richard A. Saliterman, Saliterman & Siefferman, Minneapolis, Minn., for defendant Exports, Inc.

Jerome G. Arnold, U.S. Atty., and Mary E. Carlson, Asst. U.S. Atty., Minneapolis, Minn., for amicus curiae U.S.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court upon motion of the plaintiff to amend the Court's judgment entered June 3, 1991 pursuant to Federal Rule of Civil Procedure 59(e); upon motion of defendant State of Minnesota to dismiss as to the State of Minnesota pursuant to Fed.R.Civ.P. 60(b); and upon motion of the United States for leave to file a brief as amicus curiae. The motion of the United States for leave to file a brief as amicus curiae will be granted. The remaining motions are discussed below.

DISCUSSION

I. *Whether the Judgment Should be Amended Pursuant to Federal Rule of Civil Procedure 59(e)*

This is an action to quiet title to land in the vicinity of Baudette, Minnesota officially recorded as Government Lots 3 and 4. By order dated May 31, 1991, the Court granted defendants' motions for summary judgment. 766 F.Supp. 730. The Court found that whatever interest plaintiff possessed in the lands at issue was extinguished by the Act of April 13, 1938 which imposed a flowage easement upon "all lands bordering on ... Rainy River, ceded and relinquished to the United States by the Chippewa Indians pursuant to the [Nelson] Act ... and still owned by the United States ... up to elevation one thousand and sixty-four sea-level datum." According to the express terms of this Act, all rights and equities of the Indians in and to the lands "affected by said easement" were extinguished.

At oral argument, plaintiff's counsel admitted that Lots 3 and 4 fell within this description. Plaintiff argued, however, that the Court should look beyond the plain

language of the description to the legislative history, in particular to a 1936 letter from the Army Corps of Engineers discussing the legal status of lands subject to the flowage easement treaty of 1925 between the United States and Great Britain whose purpose was regulation of the level of the Lake of the Woods. In this letter, District Engineer A.B. Jones discussed the history of the flowage easement treaty and the Nelson Act and stated that at the time the treaty was ratified on July 17, 1925, there remained a total of 331 parcels in the area which had been surveyed but not disposed of to settlers. The parcels are listed and do not include Lots 3 and 4 by legal description.

Plaintiff argued that this letter demonstrates that the Act of 1938 did not encompass Lots 3 and 4. The Court rejected this argument, however, on the grounds that the list merely sought to describe lands which were not believed to have been yet disposed of by the United States, and that the absence of Lots 3 and 4 from the list merely reflected the engineer's erroneous assumption that Lots 3 and 4 had been previously conveyed in fee to the railroad in the 1900 grant. That erroneous assumption is evidenced by the condemnation action brought by the United States pursuant to the 1925 treaty against the railroad in June of 1930 to impose a flowage easement against Lots 3 and 4.

It is apparent that pursuant to the treaty with Great Britain, the United States was obligated to obtain valid flowage easements upon all lands bordering Rainy River, including Lots 3 and 4, whether still owned by the United States under the Nelson Act, or conveyed to others. Lots 3 and 4 must have fallen within one of these categories—either they were owned entirely by the railroad and were subjected to the condemnation action, or they were still owned, at least in part, by the United States in trust for the Indians, and were subject to the Flowage Easement Act. Either way, the Indians' rights to the land have been extinguished. Because the intent of Congress to extinguish Chippewa rights to lands affected by the easement was clear from the terms of the Act, the Court held that the absence of Lots 3 and 4 from the engineer's list was not dispositive.

■ Plaintiff now argues that if the Court applies the "plain meaning" of the act of 1938 to encompass Lots 3 and 4, it must do so as well by strictly interpreting the provision of the 1938 Act extinguishing the Indians' rights and equities to the lands "affected by said easement." Plaintiff argues that the lands "affected" included only lands below elevation 1,064, and that the Indians' rights to lands above that elevation were not extinguished.

The Court disagrees. The 1938 Act set compensation payable to the Indians as a result of the extinguishment at $11,740.75. This figure is directly based upon calculations contained within the Army Corps of Engineers' letter cited above. Plaintiff's Opposition to Motion for Summary Judgment, Exh. 1, ¶ 13. This paragraph clearly states that the total sum paid to the Chippewa would reflect compensation for land both above and below elevation 1,064. As the letter explains:

> The reason for including areas above 1,064 is because of the necessity of the easement being applied to full units of property, lots or forties. Under the rules governing the disposal of these lands to homesteaders, lots or forties are not divided into smaller parts. It appears doubtful that anyone would desire to homestead one of these rather unattractive tracts after a portion of it has been subject to such an easement. Consequently, it would not be practicable to limit payment to the Indians to the acreage below 1,064 in those lots or forties which have some acreage above that level.

*Id.* at ¶ 14. Thus, it is clear that the act of 1938 intended to extinguish the Indians' rights to lands "affected" by the flowage easement, whether above or below elevation 1,064. Thus, the Court's conclusion in its May 31, 1991 order that summary judgment was appropriate because all rights and equities to Lots 3 and 4 have been extinguished was correct.

The Court finds no obstacle to consideration of the Army Corps of Engineers' letter in interpreting the scope of the extinguishment of the Indians' claims, while rejecting the letter's assumption that Lots 3 and 4 were not at the time still owned by the United States. Contrary to plaintiff's argument, this is not merely a question of the "plain meaning" of a statutory provision as against a contrary portion of the legislative history. As noted above, the Army Corps of Engineers' letter erroneously assumed that the Indians no longer possessed a reversionary interest in Lots 3 and 4. This error, however, does not mandate wholesale rejection of the letter as a source of divining congressional intent. The letter makes clear that the 1938 Act intended to extinguish the Indians' rights in lands affected by the easement, whether above or below elevation 1,064. To ascertain the intent of Congress, the Court first looks to the statutory language and then to the legislative history if the statutory language is unclear. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). That portion of the 1938 Act imposing an easement upon "all lands bordering Rainy River ..." is not unclear, and as to the meaning of this portion of the Act, the legislative history is not controlling. However, the meaning of the phrase "all lands affected by said easement" may be arguably unclear and resort to the legislative history is therefore appropriate as to this provision.

Based upon the foregoing, the Court finds no cause to amend the judgment under Fed.R.Civ.P. 59(e).

## II. *Whether the State of Minnesota Should be Dismissed*

▉▉▉ As for the State of Minnesota's motion to dismiss the complaint in part as to it, the Court finds that the motion should be granted.[1] The Court's February 2, 1990 order denying the state's motion for dismissal based on sovereign immunity relied upon the conclusion of the United States Court of Appeals for the Ninth Circuit in *Native Village of Noatak v. Hoffman,* 872 F.2d 1384 (9th Cir.1989) and other courts which held that 28 U.S.C. § 1362 constituted a congressional abrogation of eleventh amendment immunity. Subsequent to this Court's February 1990 order, the Ninth Circuit reconsidered the *Hoffman* decision. The Ninth Circuit reiterated its holding that the state was not immune from suit, but based the holding on the theory that the states consented to such suits by Indian tribes under the original framework of the Constitution, rather than on a theory of congressional abrogation.

That decision, however, has now been reversed in *Blatchford v. Native Village of Noatak and Circle Village,* —— U.S. ——, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). The Supreme Court held that sovereign immunity had not been lifted either by state consent under the original framework of the Constitution, or by congressional abrogation.

Plaintiff concedes that *Blatchford* bars suits for damages by Indian tribes against the state. Plaintiff's Reply to the Opposition of the Railroad and the State of Minnesota at 11. Plaintiff notes, however, that the Supreme Court remanded *Blatchford* for consideration of whether the state's immunity reached requests for injunctive relief, implying that *Blatchford* does not dispose of plaintiff's claims against the State of Minnesota in this case.

It is true that the eleventh amendment has been construed not to bar suits to

---

**1.** The Court's jurisdiction over the motion of the State of Minnesota is somewhat unclear. Apparently, the motion is not brought under Fed.R.Civ.P. 59 as one to amend the judgment, because the motion was not filed within ten days as required by that rule. No such time limit applies, however, to a motion pursuant to rule 60(b)(4) for relief from a judgment on the grounds that the judgment is void. Because the state is absolutely immune from suit pursuant to the eleventh amendment, the Court was without jurisdiction to enter a judgment concerning the state. Since a judgment rendered without jurisdiction is void, defendants' motion for relief is proper pursuant to Fed.R.Civ.P. 60(b)(4). *See Marshall v. Board of Education,* 575 F.2d 417, 422 (3d Cir.1978) ("a judgment may ... be void, and therefore subject to relief under 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter or the parties or entered 'a decree which is not within the powers granted to it by the law.' ").

enjoin state officials from engaging in unconstitutional conduct. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1907). In this case, however, plaintiff does not seek injunctive relief to enjoin unconstitutional activity, but rather damages and a declaratory judgment declaring title to Lots 3 and 4 to be in the plaintiff. In *Aquilar v. Kleppe,* 424 F.Supp. 433 (D.Alaska 1976), Alaska natives claimed entitlement to certain land previously held by the federal government and patented to the State of Alaska. The court held the claims barred by the eleventh amendment, specifically rejecting plaintiffs' argument that their claims fell within the exception to the eleventh amendment that allows suits for prospective injunctive relief under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Court reasoned:

> This suit, if successful, will cause the state to lose land to which it has received patents from the United States. This form of relief is similar to the "equitable restitution" which was specifically found barred by the eleventh amendment in *Edelman v. Jordan....* The Court can find no distinction of significance in the fact that it is land that is involved here rather than money. Nor does the Court accept plaintiff's characterization that this is "only" a suit to declare certain portions of the patents void *ab initio.* This case does not fit within the *Ex Parte Young* exception. *Edelman v. Jordan, supra.*

*Aquilar,* 424 F.Supp. at 436–37.

The Court agrees with the reasoning in *Aquilar.* This case does not fall within the exception for prospective equitable relief set forth in *Edelman* and *Ex parte Young.* Accordingly, the motion of the State of Minnesota to dismiss the case against it will be granted.

CONCLUSION

Based upon the foregoing, and upon all the files, records and proceedings in this case,

IT IS ORDERED that:

1. the motion of the United States for leave to file a brief as amicus curiae is granted;

2. the motion of the State of Minnesota to dismiss the complaint against the State of Minnesota as barred by the eleventh amendment is granted; and·

3. plaintiff's motion for amendment of judgment pursuant to Fed.R.Civ.P. 59(e) is denied.