OFFICE OF THE CHILD ADVOCATE; Plaintiff,

v.

Jay G. LINDGREN, Jr., in his Capacity as the Director of the Department of Children, Youth, and Families, Defendant.

No. C.A. 86–0723L.

United States District Court, D. Rhode Island.

Jan. 8, 2004.

Laureen D'Ambra, Office of the Child Advocate, John Dineen, Esq., Yesser, Glasson & Dineen, Providence, RI, for Plaintiff.

Kevin J. Aucoin, Esq., Thomas J. Corrigan, Jr., Esq., Department of Children and Their Families, Legal Department, Patri-

cia A. Sullivan, Esq., Edwards & Angell, Providence, RI, for Defendant.

## DECISION AND ORDER

LAGUEUX, Senior District Judge.

This matter is before the Court on an objection filed by Jay G. Lindgren, ("Defendant") to a Report and Recommendation issued by Magistrate Judge Robert W. Lovegreen. Judge Lovegreen recommended that this Court deny Defendant's motion to dismiss the Complaint and an alternative motion to vacate an existing Consent Decree. Defendant's objection to the Report and Recommendation is grounded on the argument that this Court should dismiss this case because: 1)the Office of the Child Advocate ("Plaintiff") lacks the requisite standing to be before this Court; 2)the doctrine of sovereign immunity protects Defendant; and 3)this Court should abstain from further action in this matter because of fundamental principles of federalism.

While Defendant's arguments may have provided grounds for dismissal of this case at an earlier point in this litigation, the fundamental issue presently before the Court is whether there are grounds to vacate an existing Consent Decree. For the reasons that follow, this Court concludes that no grounds have been asserted for vacating the Consent Decree and thus there is no basis for dismissing the Complaint. Therefore, this Court adopts the substance of the Report and Recommendation but writes to expound on the subject and restructure the opinion for purposes of clarification.

## I. Background and Procedural History

This lawsuit began seventeen years ago when the Office of the Child Advocate, a creature of the Rhode Island General Assembly, suing in its own name, filed a Complaint against the then Director of the Department for Children, Youth and Their Families ("DCYF")[1], Edward M. Collins, M.D. Although the Complaint sought injunctive and declaratory relief for "children who are or will be" in DCFY custody, no class designation or certification was sought. Compl. at ¶ 1. Plaintiff alleged that this Court had federal question jurisdiction based on violations by DCYF of the children's rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Adoption Assistance and Child Welfare Act of 1980. 42 U.S.C. §§ 620 & 670 *et seq.* While the Complaint set forth the factual situations of three children whose rights DCYF allegedly violated, Plaintiff never identified any of these children.

Plaintiff's main thrust against Defendant was pursuant to 42 U.S.C. § 1983. Plaintiff alleged that DCYF had institutionalized a practice of placing children in its custody in "night-to-night" placement in violation of the children's constitutional rights to be free from harm and enjoy equal protection of the laws. Night-to-night placement is the practice of placing a child, for any length of time, in a DCYF placement facility; congregate care facility; foster home, which is utilized as an "emergency shelter equivalent placement" as defined by DCYF policy Number 700.0140; or any other facility and/or placement for a reason other than its intended purpose. Second Amended Consent Decree at para. 2.

The Complaint contained seven counts. In Count I, Plaintiff alleged that Defen-

---

1. When Plaintiff filed this Complaint, DCYF's predecessor agency was the Department for Children and Their Families. For purposes of this opinion, this Court will refer to the De-

partment as "DCYF." Also, since the time of filing, Jay G. Lindgren, Jr. has become the Director of DCYF and still serves in that capacity.

dant's acts and omissions caused injury to children in DCYF custody and violated the Fourteenth Amendment. Count II averred that Defendant's acts and omissions resulted in the disparate treatment of children in state care regarding access to suitable shelter. Plaintiff argued that Defendant had created two groups of children: those placed in safe environments which met the children's physical and educational needs; and children "who were in effect homeless" as a consequence of multiple night-to-night placements and inadequate shelters. Count III stated an additional claim for disparate treatment. Plaintiff posited that denying some children in DCYF custody preventive services violated the Equal Protection Clause of the Fourteenth Amendment. In Count IV, Plaintiff claimed that Defendant's failure to provide the preventive services mandated by Sections 627 and 671(a)(15) of the Adoption Assistance and Child Welfare Act deprived children in DCYF custody of the privileges and immunities secured by United States laws.[2] Count V alleged that DCYF's failure to provide social services to prevent the need for foster care and/or improve conditions in the children's natural homes caused unnecessary removals of children from their homes and violated the children's rights to family integrity secured by the Fourteenth Amendment. In Count VI, Plaintiff alleged that Defendant's failure to develop the case plans for children in night-to-night and shelter care placements required by the Adoption Assistance and Child Welfare Act resulted in an additional violation of the Privileges and Immunities Clause. Count VII alleged yet another violation of the Privileges and Immunities Clause stemming from Defendant's alleged failure to plan for the children's transition from DCYF custody to independent living as required by Sections 675(1) and 677 of the Adoption Assistance and Child Welfare Act.

The parties entered into a Consent Decree approved by Senior Judge Raymond J. Pettine on September 26, 1988. In the Consent Decree, DCYF, in essence, agreed to no longer place children in its care in night-to-night placement except in "emergency" situations. 1988 Consent Decree, at para. 2. On September 29, 1989, Plaintiff filed a motion to hold Defendant in contempt for violations of the 1988 Consent Decree. The parties resolved that contempt motion by agreeing to an Amended Consent Decree on October 20, 1989 which was again approved by Judge Pettine.

Almost twelve years passed with neither party returning to court on this matter. Then, on July 12, 2001, Plaintiff filed another motion to hold Defendant in contempt for violations of the Amended Consent Decree. Again, the parties resolved their dispute by agreeing to a Second Amended Consent Decree ("SACD") on August 24, 2001. By then, this case had been assigned to this writer because Judge Pettine had taken inactive senior status. This Court approved and adopted the SACD as this Court's judgment with respect to the merits of the instant litigation. In each Consent Decree, Defendant noted that he did not admit any of the factual or legal allegations contained in the Complaint. Each Decree also allowed either party to move to modify or vacate it as provided by the Federal Rules of Civil Procedure and/or applicable law.

Plaintiff filed its most recent contempt motion on May 2, 2002. On June 28, 2002, Defendant responded with a motion to dismiss the Complaint pursuant to Rule

---

2. Congress repealed 42 U.S.C. § 627 in 1994. *See* Pub.L. No. 103–432, Title II, § 202(c), 108 Stat. 4454 (1994). Since the filing of this Complaint, the Supreme Court has held that 42 U.S.C. § 671(a)(15) does not give rise to a private right of action under § 1983. *Suter v. Artist M.,* 503 U.S. 347, 363, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).

12(b)(1) of the Federal Rules of Civil Procedure and alternatively, to vacate the SACD under Rule 60(b). Magistrate Judge Robert Lovegreen heard oral arguments on Defendant's motions on September 26, 2002 and took the matter under advisement.

Two months later, Judge Lovegreen issued a Report and Recommendation concluding that this Court should deny the motion to dismiss and the alternative motion to vacate the SACD. Judge Lovegreen addressed three main issues. The first was whether Plaintiff had the requisite standing to be before the Court. Judge Lovegreen concluded that Plaintiff had third party standing as a representative, general guardian, conservator, or other like fiduciary of children in DCYF custody. *Report and Recommendation*, at 6. The second issue involved Eleventh Amendment sovereign immunity. Judge Lovegreen advised that Defendant does not enjoy sovereign immunity because Plaintiff sought prospective injunctive relief against a named state official for federal law violations, thus bringing this case within the *Ex parte Young* exception. *Report and Recommendation*, at 10 & 14. The third issue involved fundamental principles of federalism. Defendant argued that the issue of night-to-night placement is a state issue, which Rhode Island's legislature, governor, and state officials and agencies should resolve. Judge Lovegreen found this argument unpersuasive and recommended that this Court decline to abstain from exercising jurisdiction. *Report and Recommendation*, at 29.

Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 32, Defendant filed the present objection to the Report and Recommendation and raised the same three issues outlined above. The parties briefed these issues once again to this Court and presented oral argument. The matter is now in order for decision.

## II. Standard of Review

A district court conducts a de novo review of a magistrate judge's determinations of dispositive pretrial motions. *See* Fed.R.Civ.P. 72(b). A dispositive motion is one that extinguishes a party's claim or defense. *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir.1999)(noting striking a plaintiff's pleadings or dismissing a counterclaim are dispositive motions that are reviewed de novo). Defendant's motion to dismiss is a dispositive motion because if granted, it will extinguish the claims set forth in Plaintiff's Complaint.

When conducting a de novo review, the district court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1). The district court must actually review and weigh the evidence presented to the magistrate judge, and not merely rely on the magistrate judge's report and recommendation. *See United States v. Raddatz*, 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3070.2, at 382 (2d ed. 1997 & Supp.2003). The discretion that Article III requires regarding dispositive matters allows the district judge to decide the issues in any way he or she deems proper and to reject or pay no attention to the magistrate judge's findings. Wright, et al., *supra*, § 3070.2, at 378.

## III. Discussion

Defendant objects to the Report and Recommendation on the three grounds previously noted. First, Defendant argues that this Court should dismiss the Com-

plaint because Plaintiff lacks the requisite standing to be before this Court. Second, Defendant claims that he is entitled to sovereign immunity. Third, Defendant contends that this Court should abstain from further proceedings and defer to the Rhode Island Family Court under well-established principles of federalism. Defendant has put the cart before the horse. Since Defendant agreed to the entry of the SACD as a final judgment on the merits of this case, this writer must first decide whether there are grounds to vacate the SACD before addressing Defendant's motion to dismiss the Complaint. Therefore, this Court will examine Defendant's arguments in support of his stated grounds for vacating the SACD at the outset.

■ Defendant asks this Court to vacate the SACD pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure, which allows a court to relieve a party from a final judgment if the judgment is void.[3] 12 James WM. Moore, et al., *Moore's Federal Practice* § 60.44, at 60–139 (3d ed.2003). The fact that Defendant raises the above arguments for the first time after nearly seventeen years of litigation does not make the motion stale because relief from a void judgment has no time limitations. *See United States v. Boch Oldsmobile*, 909 F.2d 657, 661 (1st Cir.1990); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2862, at 324 (2d ed. 1995 & Supp.2003). While other provisions of Rule 60(b) are discretionary, a court has no choice but to vacate when the motion is brought under subsection four and the judgment is void. Wright, et al., *supra*, § 2862, at 322.

■ Rule 60(b)(4) applies to all final judgments including consent judgments. *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); Wright, et al., *supra* § 2852, at 233–35. A consent decree reflects an agreement of the parties and thus is, in some respects, contractual in nature. *Rufo*, 502 U.S. at 378, 112 S.Ct. 748. However, it is also an agreement that the parties desire and expect a court to enforce subject to the rules generally applicable to other judgments and decrees. *Id.* (citing *System Federation No. 91, Railway Employees v. Wright*, 364 U.S. 642, 650–51, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961)). As such, a consent decree is a judicial act and has the same force and character as a judgment rendered after a contested trial. *Inmates of the Boys' Training Sch. v. Southworth*, 76 F.R.D. 115, 123 (D.R.I. 1977).

■ A judge must decide a motion brought under Rule 60(b)(4) by balancing competing policies of the importance of the finality of judgments and the desirability of deciding disputes on their merits. *See Teamsters, Chauffeurs, Local No. 59 v. Superline Transp. Co., Inc.*, 953 F.2d 17, 19 (1st Cir.1992). Courts are reluctant to reopen consent judgments, because in making such agreements, the parties voluntarily and consciously decide not to contest the legal and factual elements of their case. *Boch Oldsmobile*, 909 F.2d at 660. Therefore, courts narrowly construe the term "void judgments." *Id.* at 661 (quoting *United States v. Berenguer*, 821 F.2d at 22); *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir.1972); Moore, *supra*, § 60.44[1][a].

---

**3.** Rule 60(b) provides six alternative grounds to relieve a party from a final judgment. However, Defendant's papers and consequently, the Report and Recommendation, only address subsection four. *Mem. in Supp. of Def's. Mot. to Dismiss Pursuant to Rule* *12(b)(1), or Mot. to Vacate Consent Decree Pursuant to Rule 60(b)*, at 24–25; *Report and Recommendation*, at 3–4. Therefore, this Court will limit its discussion and decision to that provision.

A judgment is void and subject to vacation under Rule 60(b)(4) only if the court rendering the judgment lacked personal or subject matter jurisdiction, or plainly usurped its power and committed a due process violation. *Boch Oldsmobile,* 909 F.2d at 661; *accord U.S. v. Berke,* 170 F.3d 882, 883 (9th Cir.1999); *Baumlin & Ernst v. Gemini,* 637 F.2d 238, 241 (4th Cir.1980); *Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.,* 624 F.2d 822, 825 (8th Cir.1980); *and see,* Moore, *supra* § 60.44[1][a](stating a judgment is not void if the court has jurisdiction over the subject matter and parties). A court plainly usurps its power when there is a "total want of jurisdiction." *Kansas City S. Ry. Co.,* 624 F.2d at 825. However, a court must distinguish this total want of jurisdiction from an error in exercising jurisdiction. Moore, *supra,* § 60.44[1][a]. A judgment is not void merely because it is erroneous. *Boch Oldsmobile,* 909 F.2d at 661; Wright, et al., *supra,* § 2862, at 326. Only in the rare instance, where a court clearly usurps its power, is a judgment rendered void. *Kansas City S. Ry. Co.,* 624 F.2d at 825; *Lubben,* 453 F.2d at 649; Moore, et al., *supra,* § 60.44[1][a]. Therefore, in order to decide Defendant's motion to vacate, this Court must determine whether it had personal and subject matter jurisdiction when it entered the SACD.

*A. Personal Jurisdiction*

A federal court has personal jurisdiction over a defendant when that defendant was brought to court in accordance with the Due Process Clause of the Fourteenth Amendment. *Russell v. Enterprise Rent–A–Car Co. of Rhode Island,* 160 F.Supp.2d 239, 249 (D.R.I.2001). Jurisdiction based on physical presence alone is sufficient because it is one of the continuing traditions of our legal system that defines the due process standard. *Burnham v.Super. Ct. of Cal.,* 495 U.S. 604, 619, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990). This Court had personal jurisdiction over the parties when it entered the SACD because both Plaintiff and Defendant were functionaries of the State of Rhode Island and were physically present in this State throughout this litigation.

*B. Subject Matter Jurisdiction*

A federal court has subject matter jurisdiction when a case arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331 (1980). The present action arose under the Constitution and laws of the United States because Plaintiff alleged violations of both the Fourteenth Amendment and the Adoption Assistance and Child Welfare Act.[4] Since this Court may only vacate the SACD if its judgment was void for lack of jurisdiction, this writer must now consider whether any of Defendant's arguments on standing, sovereign immunity, or abstention relate to and affect the Court's subject matter jurisdiction.

**1. Standing**

The first issue that the Report and Recommendation addressed was whether Plaintiff had the requisite standing to bring the present action. Judge Lovegreen concluded that standing was grounded in the Case and Controversy requirement and pertained to whether or not the court had subject matter jurisdiction. *Report and Recommendation,* at 4–5. He

---

4. When this Court entered the SACD in 2001, it lacked subject matter jurisdiction with regard to Counts 4 and 6 of the Complaint because the Supreme Court had held that 42 U.S.C. § 671(a)(15) does not give rise to a private right of action under § 1983. *Suter,* 503 U.S. at 363, 112 S.Ct. 1360. However, this is not enough to render the judgment void as this Court had subject matter jurisdiction under 42 U.S.C. § 1983 because of the viable underlying Constitutional claims.

opined that Plaintiff had third party standing because Plaintiff has a close relationship with children in state care, the state legislature designated Plaintiff to represent and protect those children's rights and liberties, and the children as minors could not sue on their own behalf in federal court. *Id.* at 6–7, Judge Lovegreen found that the Plaintiff draws strong parallels to a guardian ad litem, next friend, or legal guardian, all persons with standing to sue on behalf of children in their care. *Id.* Therefore, Judge Lovegreen concluded that the Plaintiff met the third party standing requirements and recommended that this Court deny Defendant's motion to dismiss for lack of standing. *Id.* at 8.

This Court need not reach the issue of whether Plaintiff had the requisite standing to commence and pursue this litigation because of the entry of the SACD. As this writer stated during oral arguments, Plaintiff's lack of standing was one of several procedural flaws in this case. However, once the parties agreed to a consent decree, that decree covered a multitude of procedural sins. Therefore, the "guts of this case" is whether there are grounds to vacate the SACD.

■ While the Supreme Court has required a plaintiff to demonstrate an injury in fact (standing) before a federal court may assume jurisdiction, *O'Shea v. Littleton*, 414 U.S. 488, 493, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the Court has set forth a different rule regarding standing in consent decree cases. Once a court enters a consent decree, errors in deciding whether or not the suit presents a case or controversy are not open to attack by a motion to vacate. *Swift & Co. v. United States*, 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587 (1928); *See also, Coalition of Black Leadership v. Cianci*, 570 F.2d 12, 15–16 (1st Cir.1978)(citing *Swift* and holding that when the court had personal and subject matter jurisdiction over the parties, such jurisdiction may not be reviewed through a motion to vacate filed years after a consent decree was entered). In explaining this rule, the Eighth Circuit noted that if a court with personal and subject matter jurisdiction enters a consent decree and later grants a motion to vacate it, that court sanctions a breach of contract and becomes a party to such breach. *Walling v. Miller*, 138 F.2d 629, 631 (8th Cir.1943). But if the court lacked power to hear the case in the first instance, it also lacks power to sanction a consent decree violation. *Id.*

■ Jurisdiction refers to a court's power to entertain a suit, consider the merits, and render a binding decision. *Gen. Inv. Co. v. N.Y. Cent. Ry. Co.*, 271 U.S. 228, 230, 46 S.Ct. 496, 70 L.Ed. 920 (1926). *See also, Inmates of the Boys' Training Sch.*, 76 F.R.D. at 124 (noting that jurisdiction does not refer to the various elements, such as standing or the existence of a real controversy that limit a plaintiff's right to recovery). The merits are the various elements that enter into or define a plaintiff's right to the relief requested. *Gen. Inv. Co.*, 271 U.S. at 230, 46 S.Ct. 496. There is jurisdiction but an absence of merit when the plaintiff seeks preventive relief against a threatened violation of law about which he has no right to complain. This is so when the plaintiff will not suffer injury or when an agency with a duty to represent the public has no right to request the relief sought. *Id.* Whether a plaintiff has the requisite standing is a question relating to the merits of the case and its determination is an exercise of jurisdiction. *Id.* at 230–31, 46 S.Ct. 496. If the court resolves this question against the plaintiff, the appropriate judgment is a dismissal for want of a meritorious claim rather than for want of jurisdiction. *Id.* at 231, 46 S.Ct. 496.

■ This Court's entry of the SACD insulates that judgment from Defendant's present attack on the ground of lack of standing. Whether or not Plaintiff has standing to seek declaratory and injunctive relief on behalf of any number of unidentified children in DCYF custody is an issue that defines Plaintiff's right to relief and goes to the merits of this case rather than this Court's jurisdiction. In short, assuming that Plaintiff lacked standing to bring the Complaint and present this case for judicial relief, that is not a basis for this Court to now vacate the SACD. Therefore, Defendant's motion to vacate for lack of standing fails and must be denied.

## 2. Eleventh Amendment Sovereign Immunity

Defendant argues strenuously that the Eleventh Amendment bars this action because it is, in reality, against a state agency. Judge Lovegreen rejected this argument by applying the exception set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). He, thus, concluded that the Eleventh Amendment did not apply in this case. *Report and Recommendation* at 10.[5] This Court agrees and concludes that the Eleventh Amendment does not provide a ground for vacating the SACD in this case.

■ The Eleventh Amendment prohibits a federal court from exercising subject matter jurisdiction over a private party suit against a state government or state official. *Sandoval v. Hagan,* 197 F.3d 484, 492 (11th Cir.1999); *See also* Erwin

Chemerinsky, *Federal Jurisdiction* § 7.3, at 396 (3d ed.1999)(noting a majority of the current Supreme Court sees the Eleventh Amendment as a restriction on the subject matter jurisdiction of federal courts); Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law, Substance & Procedure* § 2.12(a), at 153 (3d ed. 1999)(Eleventh Amendment is a jurisdictional bar to suits brought against state governments in federal courts). *But see Wis. Dep't of Corrs. v. Schacht,* 524 U.S. 381, 391, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998)(Supreme Court has not decided that Eleventh Amendment immunity is a matter of subject matter jurisdiction); *Parella v. Ret. Bd. of the R.I. Employees' Ret. Sys.,* 173 F.3d 46, 56 (1st Cir.1999)(noting that the relevant maxim in the Eleventh Amendment context is not that a federal court may not act without first establishing jurisdiction, but that the court should not reach constitutional questions before it is necessary to decide them). Therefore, for purposes of this case, this Court will assume that if Defendant has sovereign immunity and no exceptions apply, this Court lacked jurisdiction to enter the SACD and must grant Defendant's motion to vacate. In *Red Lake Band of Chippewa Indians v. Baudette,* 769 F.Supp. 1069, 1072, n. 1 (D.Minn.1991), the court noted that when a state is immune from suit pursuant to the Eleventh Amendment, the court lacks jurisdiction, any judgment entered is void, and a motion for relief is proper under Fed.R.Civ.P. 60(b)(4). However, that is

---

5. In the alternative, the Report and Recommendation addressed Plaintiff's claim of waiver of sovereign immunity on any of four grounds: 1)DCYF's litigation conduct; 2)the General Assembly's broad waiver of Rhode Island's sovereign immunity for certain tort claims in federal court through R.I. Gen. Laws § 9–31–1 (2003); 3)the creation of the Child Advocate's Office; and/or 4)the Child Welfare Act. The Supreme Court is currently

addressing the issue of whether a state waives sovereign immunity by entering into a consent decree. *See Frazar v. Gilbert,* 300 F.3d 530 (5th Cir.2002) *cert granted in part sub nom, Frew v. Hawkins,* 538 U.S. 905, 123 S.Ct. 1481, 155 L.Ed.2d 223 (2003). However, since this Court concludes that the *Ex parte Young* exception applies, there is no need to address the waiver issue.

not the case here because of the application of the *Ex parte Young* exception.

■ This Court must first decide whether the Eleventh Amendment applies at all in this type of situation. When a plaintiff names a public officer in his or her official capacity, that plaintiff seeks to impose liability on the officer's employer, which makes a suit against a state official the functional equivalent of a suit against the state. *See Brandon v. Holt*, 469 U.S. 464, 469, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)(noting official capacity suits generally represent an action against the entity employing the officer); *Rubacha v. Coler*, 607 F.Supp. 477, 480 (N.D.Ill.1985). In a previous action for damages against DCYF and its agents, the First Circuit noted this Court's finding that a state official may not be sued under § 1983 in his or her official capacity. *Kauch v. Dep't for Children, Youth, and their Families*, 321 F.3d 1, 3 (1st Cir.2003)(citing *Will v. Michigan*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). *See also Chrissy F. By Medley v. Miss. Dep't. Of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir.1991)(noting the Eleventh Amendment bars claims for damages against state officers in their official capacities).

■ In this case, Plaintiff originally named a public officer, Edward W. Collins, M.D., in his official capacity as the Director of DCYF. Compl. at 1. In so doing, Plaintiff sought relief against DCYF, a state agency, which makes this action the functional equivalent of a suit against the State of Rhode Island. Therefore, the Eleventh Amendment grants Defendant sovereign immunity, unless an exception to the above rules applies. *See Rubacha*, 607 F.Supp. at 480 (suing defendants in their official capacities makes the action a suit against the state and requires an analysis of the *Ex parte Young* exception).

■ The *Ex parte Young* exception simply stated is that the Eleventh Amend-

ment does not bar a suit for prospective injunctive relief against a named state official for ongoing federal law violations. *See Ex parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908)(federal court siting in equity may enjoin state officials who violate the federal Constitution); *R.I. Dept. of Envtl. Mgmt. v. United States*, 304 F.3d 31, 52 (1st Cir.2002); *Westside Mothers v. Haveman*, 289 F.3d 852, 860 (6th Cir.2002); *Doe v. Chiles*, 136 F.3d 709, 720 (11th Cir.1998); *Occean v. Kearney*, 123 F.Supp.2d 618, 621 (S.D.Fla.2000)(*Ex parte Young* exception applied to § 1983 action against the Secretary and District Manager of the Florida Department of Children and Family Services alleging violations of due process and the Child Welfare Act). An officer, who claims to act in the state's name and violates the Federal Constitution, loses his official or representative character and is responsible for his individual conduct. *Ex parte Young*, 209 U.S. at 160, 28 S.Ct. 441. The state may not grant this officer any immunity from his responsibilities under the Constitution. *Id.*

■ This case fits squarely within the *Ex parte Young* exception. Plaintiff brought this action seeking prospective injunctive and declaratory relief. Compl. at para. 1. Plaintiff sued a named state official in his official capacity as the Director of DCYF. Finally, Plaintiff alleged ongoing violations of the Federal Constitution and the Adoption Assistance and Child Welfare Act. Compl. at para. 7. When Defendant places children in DCYF custody on night-to-night placement, he allegedly violates the Constitution, loses his official capacity and sovereign immunity protection, and is responsible for his individual actions. *See Doe v. New York City Dept. of Soc. Servs.*, 670 F.Supp. 1145, 1184 (S.D.N.Y.1987)(concluding a program of night-to-night placement violates plaintiffs' constitutional right to conditions which bear a reasonable relationship to the purposes of the City's cus-

tody). Therefore, this Court agrees with Judge Lovegreen that the *Ex parte Young* exception applies and thus concludes that the Eleventh Amendment does not provide a ground for vacating the SACD.

 Defendant asks this Court to follow the Supreme Court's dictum in *Idaho v. Coeur d'Alene*, which noted that the *Ex parte Young* exception does not apply when the suit implicates a state's special sovereignty interest. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 287, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). While Rhode Island has a strong interest in the administration of its child welfare system, this interest does not rise to the level of a special sovereignty interest, such as a state's power to tax. *See Joseph A. v. Ingram*, 275 F.3d 1253, 1260–61 (10th Cir.2002)(holding a state's interest in administering its child welfare system is not a "core sovereign interest" that would preclude an application of *Ex parte Young*). This Court agree with Judge Lovegreen's recommendation that this case does not implicate any special sovereignty interests. *Report and Recommendation*, at 13. Therefore, there is no basis for vacating the SACD on sovereign immunity grounds.

## 3. Abstention

Judge Lovegreen concluded that no federal abstention doctrine applied to this case. Defendant objects to that observation. This Court agrees with Judge Lovegreen but goes one step further and concludes that no federal abstention rules relate to a basis for vacating the SACD in any event. *See Duran v. Carruthers*, 678 F.Supp. 839, 847 (D.N.M.1988)(restraints imposed by comity considerations are not

jurisdictional). The bottom line is that this Court will not abstain from enforcing a decree that it entered for two basic reasons. First of all, the instant case does not fit within any of the established abstention doctrines because there are neither pending state proceedings nor issues of unclear state law involved here. Secondly, there is no authority that supports abstention after a federal court has entered a final judgement.

The abstention doctrines are judicially created rules whereby a federal court may decide not to hear a matter before it even when all other jurisdictional and justiciability requirements are present. Chemerinsky, *Federal Jurisdiction* § 12.1, at 735. The Supreme Court has stated that federal courts must proceed to judgment and give redress to parties before them in every case to which their jurisdiction extends. *New Orleans Pub. Serv. v. Council of New Orleans*, (hereinafter, *"NOPSI"*), 491 U.S. 350, 358, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)(quoting *Chicot County v. Sherwood*, 148 U.S. 529, 534, 13 S.Ct. 695, 37 L.Ed. 546 (1893)). Therefore, abstention is "an extraordinary and narrow exception" to a federal court's duty to hear controversies properly before it and only applies in exceptional circumstances. *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

### a. Younger Abstention

 Defendant first argues that this Court should follow the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and thus dismiss the Complaint.[6]

---

**6.** There is no merit to Plaintiff's contention that Defendant waived his right to raise this argument by failing to raise the issue of *Younger* abstention in the proceedings before Judge Lovegreen. *Pl's. Mem. in Supp. of Magis. Lovegreen's Rep. & Recommendation*,

at 18–19. While Defendant is not entitled to a de novo review of an argument never raised before the Magistrate Judge, *Paterson–Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir.1988), Defendant did raise and the Report and Recom-

The *Younger* abstention doctrine reflects a general principle that subject to certain rare exceptions, a federal court should further interests of equity, comity and federalism and not enjoin a pending state criminal proceeding. *Westin v. McDaniel,* 760 F.Supp. 1563, 1566 (M.D.Ga.1991)(citing *Younger,* 401 U.S. 37, 91 S.Ct. 746). The Supreme Court developed the *Younger* doctrine in respect for state functions, recognizing that this country is a Union of separate state governments, and to further its belief that the national government functions best if the states and their institutions are free to perform their separate functions as they decide. *NOPSI,* 491 U.S. at 364, 109 S.Ct. 2506 (quoting *Younger,* 401 U.S. at 44, 91 S.Ct. 746). The *Younger* decision requires a federal court to abstain when there is: 1)a pending state proceeding; 2)implicating important state interests; and 3)in which the state court may determine the federal constitutional claims. *Joseph A.,* 275 F.3d at 1267(citing *J.B. v. Valdez,* 186 F.3d at 1291). The Supreme Court's concern for comity and federalism has led the Justices to expand *Younger* to apply to state civil proceedings. *NOPSI,* 491 U.S. at 367–68, 109 S.Ct. 2506 (citations omitted).

 Defendant's argument that this Court should abstain under *Younger* must fail because there is no known pending state proceeding with which this Court's judgment would interfere. *See Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992)(while the Court has extended *Younger* abstention to civil cases, absent any pending proceeding in state tribunals, application of *Younger* is clearly erroneous); *Guiney v. Roache,* 833 F.2d 1079, 1085 (1st Cir.1987)(*Younger* has no application where plaintiff does not seek to enjoin any

pending or threatened, criminal or civil proceeding); *accord Rubin v. Smith,* 817 F.Supp. 987, 992–93 (D.N.H.1993); *Westin v. McDaniel,* 760 F.Supp. 1563, 1568 (M.D.Ga.1991). Defendant argues that there are ongoing state proceedings because the Rhode Island Family Court retains jurisdiction over children in state care and addresses issues of night-to-night placement on a daily basis. This Court finds Defendant's argument unpersuasive.

Under Rhode Island law, the Family Court has exclusive original jurisdiction over proceedings concerning any delinquent, wayward, dependent, neglected, or mentally disabled child who is residing or present in Rhode Island. R.I. Gen. Laws § 14–1–5(1)(2003). The Family Court assumes this jurisdiction when DCYF or any person authorized by law files a petition stating that a child is abused, neglected, or dependent. R.I. Gen. Laws § 14–1–11 (2003); R.I. R. Juv. Proc., 5 & 13. The Family Court then holds a hearing on the petition. R.I. R. Juv. Proc., 15. If the Court grants the petition, it may place the child under supervision in the child's home, with a relative, or in the custody of an agency or institution such as DCYF. R.I. Gen. Laws § 14–1–32 (2003); R.I. R. Juv. Proc., 11. DCYF then has wide discretion as to where to place the child. *See* R.I. Gen. Laws § 42–72–5 (2003)(granting the Director of DCYF broad powers including the power to establish plans and facilities for emergency treatment, relocation, and physical custody of children and to adopt rules and regulations that are reasonably necessary to implement child welfare services and foster care programs). If a child comes into state custody before his or her eighteenth birthday, the Family Court retains jurisdiction until the child turns

---

mendation did address this issue. *See Mem. in Supp. of Def's. Mot. to Dismiss,* at 32–37;

*Report & Recommendation,* at 23–24.

twenty-one or is discharged, whichever comes first. R.I. Gen. Laws § 14–1–6(a)(2003). While DCYF must submit annual reports to the Family Court regarding children in state custody, it is DCYF, rather than the Family Court, who decides to put a child on night-to-night placement. *See* R.I. Gen. Laws §§ 14–4–5, 42–72–5 (2003). The Family Court re-enters the proceeding when a parent, guardian, next friend, or counsel of a child committed to DCYF care returns to the Court with a motion to modify or vacate an original custody order. R.I. Gen. Laws § 14–1–42 (2003).

Defendant has not made a showing that there is a pending state proceeding regarding any child involved in this case. That is obviously because Plaintiff has not brought the motion to adjudge in contempt on behalf of any specific child in DCYF custody. Although the question of abstention may recur when the Court hears that motion on its merits, it is not an issue now. One thing is clear. Although the Family Court retains jurisdiction over children in state custody, that Court has no present jurisdiction over any of the three children referred to in Plaintiff's Complaint because those children are presently in their thirties. All that this Court can say now in view of the present posture of this case, is that enforcing the SACD will not interfere with any known Family Court proceeding or decision. Since there is no known ongoing state proceeding regarding any child involved in the case at present, there is no basis for this Court to abstain under *Younger v. Harris* at this time.

This case is distinguishable from *Joseph A v. Ingram,* 275 F.3d 1253 (10th Cir.2002) and *31 Foster Children v. Bush,* 329 F.3d 1255 (11th Cir.2003) *cert denied sub nom, Reggie v. Bush,* —— U.S. ——, 124 S.Ct. 483, —— L.Ed.2d —— (2003), which Defendant relies on for his abstention argument. In *Joseph A,* the Office of the Children,

Youth, and Families Department responded to a contempt motion with a motion to dismiss based in part on abstention grounds sixteen years after the parties entered into a consent decree. *Id.* at 1257. New Mexico state law required a series of five different hearings in the children's court at various intervals of a child's tenure in state custody. *Id.* at 1268, n. 3. Enforcement of certain provisions of the consent decree in *Joseph A* required federal interference with those proceedings. *Id.* at 1268. For example, the consent decree contained a provision calling for the use of a state-created Citizen Review Board, which would review the situation of children in state custody and submit a report to the children's court. *Id.* at 1273. The provision essentially asked the federal court to review the operation of a mechanism that was an essential part of the state proceedings. *Id.*

The Tenth Circuit noted that *Younger* governs whenever the requested relief will interfere with a state court's ability to conduct its proceedings. *Joseph A,* 275 F.3d at 1272. The Court found the above provision an impermissible interference in state proceedings. *Id.* The Court upheld procedural provisions of the consent decree, which set forth ways for the State to comply with the decree's requirements because they did not pose problems under *Younger. Id.* at 1273.

Defendant also relies on a recent Eleventh Circuit decision which upheld a district court's decision to abstain under *Younger v. Harris. 31 Foster Children v. Bush,* 329 F.3d 1255 (11th Cir.2003). There, the plaintiffs asked the district court to appoint a panel with authority to implement a statewide plan reforming Florida's child dependency proceedings and a permanent child advocate to oversee the plan. *Id.* at 1262. The Eleventh Circuit found that this relief transferred re-

sponsibility for state child dependency proceedings from state to federal court and created a problematic "federal court oversight of state court operations" that triggered the need for *Younger* abstention. *Id.* at 1279.

Even if there were pending state proceedings in this case, enforcing the SACD, which the parties voluntarily agreed to and asked this Court to enter, will not involve federal oversight of or interfere with the Family Court's ability to conduct its proceedings. Unlike *Joseph A* or *31 Foster Children,* enforcing the SACD will not require this Court to direct or review the Family Court's decisions. Rather, this Court will act in its own federal proceeding, enforce a judgment that it entered, and review the actions of DCYF, an agency of the state executive branch. *See NOPSI,* 491 U.S. at 368, 109 S.Ct. 2506 (*Younger* does not prevent review of matters other than judicial proceedings); 17A James WM Moore, et al., *Moore's Federal Practice* § 122.05[2][e], at 122–78 (3d ed.2003)(federal courts have not applied *Younger* abstention to limit federal review of state and local executive action).

The SACD guides Defendant's exercise of the broad discretion granted to him by Rhode Island law after the Family Court assigns a child to state custody. Like the consent decree provisions held valid in *Joseph A,* the SACD sets forth procedural guidelines to help DCYF comply with the decree's requirements. Simply put, this Court's enforcement of the SACD does not involve federal review of an essential part of state proceedings and does not raise the federalism concerns implicated by the *Younger* abstention doctrine. Therefore, this Court sees no reason to abstain under *Younger* and vacate the SACD at this time.

Defendant also asks this Court to follow the Supreme Court's direction in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), and exercise discretion in intervening in state affairs. In *Rizzo,* the Court affirmed the reversal of a district court's order that intruded upon the affairs of a state agency, the Philadelphia Police Department. *Id.* at 380, 96 S.Ct. 598. Following a trial, the district court ordered the police department to draft, for the court's approval, a comprehensive program for dealing with civilian complaints of police misconduct. *Id.* at 365, 96 S.Ct. 598. The parties negotiated this program in accordance with the court's detailed suggestions and the court incorporated the program into its final judgment. *Id.* The Supreme Court concluded that the injunctive order significantly revised the internal procedures of the Philadelphia Police Department and limited the Department's "latitude in the dispatch of its own internal affairs." *Id.* at 379, 96 S.Ct. 598. The district court should have abstained under principles of federalism and not injected itself into the internal disciplinary affairs of the state police department. *Id.,* at 380, 96 S.Ct. 598.

While *Rizzo* is analogous to the instant case in that the district court's order limited the police department's discretion over its own affairs, it is also distinguishable because the parties here entered into the SACD voluntarily. This Court never suggested or mandated provisions that should appear in the SACD. Rather, the parties drafted the decree, amended it twice, and repeatedly asked this Court to enter the decree as its final judgment. Unlike *Rizzo,* where the district court essentially dictated how a state agency must act, all this Court must do to enforce the SACD is ensure that the parties comply with their own agreement. *See Duran v. Carruthers,* 678 F.Supp. at 848 (noting when parties agree to and present the court with a consent judgment, they waive their rights to restraints of comity in selecting equitable remedies). This is not a situation

where this Court will inject itself into the internal affairs of DCYF. Instead, DCYF agreed to a set of procedures that would guide its exercise of discretion regarding the placement of children in state custody. Therefore, Defendant's argument that this Court should now abstain under the Supreme Court's reasoning in *Rizzo* must also fail.

### b. Burford Abstention

Defendant's final argument is that this Court should follow *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and not interfere with the administration of Rhode Island's child welfare system. The *Burford* doctrine directs federal courts sitting in equity to abstain when a case involves both complex questions of state law and administration of that law by a complex scheme of state administrative agencies. *FDIC v. Sweeney*, 136 F.3d 216, 219 (1st Cir.1998). This writer agrees with Judge Lovegreen that Defendant's argument on this point is unpersuasive.

■ The *Burford* abstention doctrine does not apply in this case because there are no difficult questions of state law involved. *See Guiney v. Roache*, 833 F.2d at 1083 (quoting *Examining Bd. of Eng'rs., Architects and Surveyors v. Flores de Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976)(noting that ordering abstention where a federal constitutional claim was not complicated by an unresolved question of state law would "convert abstention from an exception to a general rule")). Each count of Plaintiff's Complaint raises a federal question. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 815, at n. 21, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)(noting that the presence of a federal basis for jurisdiction may raise the level of justification required for abstention). Plaintiff has not presented any questions of state law for resolu-

tion. What is involved is the construction of a federal court decree. Therefore, this is not a situation that makes *Burford* abstention appropriate.

■ This Court acknowledges the important and sensitive nature of Rhode Island's child welfare program and the Family Court's role regarding children in state care. However, that is not enough to bring this case within any of the above abstention doctrines at this time. *See NOPSI*, 491 U.S. at 363, 109 S.Ct. at 2515(quoting *Zablocki v. Redhail*, 434 U.S. 374, 380, n. 5, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978)("there is no doctrine requiring abstention merely because resolution of a federal question may result in overturning a state policy")); *Guiney v. Roache*, 833 F.2d at 1085 (First Circuit unaware of any case where a state court's greater sensitivity to state or local conditions justified federal abstention); *Rubin v. Smith*, 817 F.Supp. at 992 (abstention due to a lack of expertise in family law matters is unwarranted where the complaint does not request the court to issue a divorce, alimony, or child custody decree). Furthermore, courts apply the abstention doctrines to allow a state court to proceed without unwarranted federal interference. *Younger*, 401 U.S. at 43, 91 S.Ct. 746. If this Court were to now abstain from enforcing its own judgment, it would either render the consent decree a nullity and leave Plaintiff without a remedy or be asking the Family Court to enforce a federal court order. *See United States v. Fisher*, 864 F.2d 434, 439 (7th Cir.1988)(noting a consent decree is a contract through which the parties deal away their rights to litigate the merits of the dispute). This writer is unaware of any federal court that has abstained so that a state court could essentially enforce a federal judgment. Such interference in state court affairs is exactly the activity and entanglement between state and fed-

eral courts that the abstention doctrines work to avoid.

Finally, even if abstention had been appropriate initially in this litigation, there is no authority that supports abstention after the entry of a final judgment in federal court. In *Guiney,* the First Circuit vacated a district court's decision to abstain after a trial on the merits. 833 F.2d at 1080. While the Tenth Circuit stated that *Younger* would bar enforcement of some provisions of the consent decree in *Joseph A,* the Court did not grant the broad sweeping relief of vacating the entire decree or dismissing the Complaint that Defendant requests in this case. *See Joseph A,* 275 F.3d at 1273. For the reasons stated above, principles of federalism provide no basis for vacating the SACD in this case.

## IV. Conclusion

The Second Amended Consent Decree, presently, is alive and well because when this Court entered that final judgment it had both personal and subject matter jurisdiction. Since the SACD is a resolution of the merits of this case, there can be no basis for dismissing the original Complaint filed in this matter.

The next order of business is for the Court to hear Plaintiff's motion to adjudge Defendant in contempt for failure to comply with the SACD. Since Plaintiff is acting in a representative capacity for a de facto class (the children in the care and custody of DCYF), in order to be successful in prosecuting this motion, Plaintiff will have to prove that Defendant wilfully violated the SACD with respect to specific children who are members of the class. Plaintiff will also have to show that enforcement of the SACD with regard to those specific children does not interfere with Family Court decisions or proceedings affecting those children.

It is obvious that this will be an extended and time consuming process. Undoubtedly, Defendant will need pre-hearing discovery to determine on whose behalf this motion is being prosecuted (the real parties in interest) and the facts of each child's case being relied on.

Other issues may come to the forefront as this matter progresses. For example, although procedural flaws in the original Complaint are no longer in issue, a contempt hearing constitutes a new proceeding and this Court will have to determine whether Plaintiff has presented a real case or controversy. *See Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)("a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"); *31 Foster Children,* 329 F.3d at 1263 (finding claims of children who were no longer in state custody moot and thus plaintiff could not satisfy the case and controversy requirements). In addition, this Court may have to determine whether it is able to enforce the SACD as written bearing in mind that an order granting injunctive relief must be specific and describe in reasonable detail the acts sought to be restrained. Fed. Rule Civ. Pro. 65(d); *See also, AMF Inc. v. Jewett,* 711 F.2d 1096, 1101–02 (1st Cir.1983)(noting, during a contempt proceeding for failure to comply with a consent decree, that Rule 65(d) may bar enforcement where the decree is too vague). Determining the breadth of the "emergency" exception to night-to-night placement is at the heart of this issue. It may prove to be a daunting task for the Court to determine the parameters of that exception.

In any event, this writer makes the following observations for the guidance of the parties. When there is a dispute between two arms of state government, normally, resolution of that matter is achieved

through the political process by the legislative and executive branches of government. The third branch is generally ill-equipped to deal with such matters, and oversee the affairs of a state agency. However, if the parties cannot resolve their differences in the usual manner, this Court stands ready to do what is necessary to bring this long, smoldering controversy to a final conclusion.

It suffices to say now that this Court is only deciding today that Defendant's motions to vacate the Second Amended Consent Decree and to dismiss this case, hereby, are denied.

It is so ordered.